IN THE UNITED STATES DISTRICT COURT
FOR THE   MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VIVIAN and ROBERT ZALE,
individually and as husband and wife,

      Plaintiffs,

v.

MERCK & CO., INC.,
A New Jersey Corporation,

      Defendant.

JURY TRIAL DEMANDED

Civil Action No.:

---

## COMPLAINT

Plaintiffs, Vivian Zale and Robert Zale, individually and as husband and wife, by and through the undersigned attorneys, hereby file this Complaint against Defendant, MERCK & CO., INC., (hereinafter referred to as "Defendant'"), and allege as follows:

## PARTIES

1.    Plaintiff, Vivian Zale, was born on August 27, 1940, and is a resident of the city of Englewood, Sarasota County, State of Florida. Plaintiff used FOSAMAX from August 1997 through and including the latter part of 1998.

2.    Plaintiff, Vivian Zale, was married to Robert Zale at all times material to this action. Plaintiff, Robert Zale, is a resident of the city of Englewood, Sarasota County, State of Florida.

3.    Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. The Defendant's principal office is located at One Merck Drive, Whitehouse Station, New Jersey.

4.    Defendant was at all relevant times authorized to conduct business in the State of Florida.

5.    Defendant has regularly transacted business in the State of Florida and continues to do so.

6.    At all relevant times Defendant, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis, osteopenia, and Paget's Disease.

7.    Defendant, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Florida.

8.    Defendant derives substantial revenue from pharmaceutical products used or consumed in the State of Florida.

9.    Defendant expected, or should have expected, that its business activities could or would have consequences within the State of Florida.

## JURISDICTION AND VENUE

10.    The amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

11.    This Court has jurisdiction under 28 U.S.C. §1332 because the parties are of diverse citizenship and the amount in controversy meets or exceeds the statutory minimum.

12.    Venue is proper under 28 U.S.C. §1391(a) because a significant portion of the material events giving rise to this action occurred in Sarasota County, Florida.

## FACTUAL BACKGROUND

13. At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

14. In September 1995, the United States Food and Drug Administration ("FDA") approved Defendant's compound alendronate for various uses, including the treatment of osteoporosis and Paget's Disease. Alendronate is marketed by Defendant as FOSAMAX.

15. FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class, such as Aredia and Zometa, are used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

16. There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for FOSAMAX confirms that the molecule contains a nitrogen atom.

17. Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Defendant knew or should have know that FOSAMAX, as a nitrogenous bisphosphonate,

shared a similar adverse event profiles to the other drugs within this specific subclass of bisphosphonates (i.e., those containing nitrogen).

18.     Defendant knew and or should have known that bisphosphonates, including FOSAMAX, inhibit endothelial cell function. Similarly, Defendant knew or should have known that bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic changes appear to be cumulative in nature.

19.     Defendant also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That in turn can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

20.     Dentists are now being advised by dental associations to refrain from using any invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

21.     Once the osteonecrosis begins and becomes symptomatic, it is very difficult to treat and typically is not reversible.

22.     Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the jaw and other dental complications among users began surfacing, indicating that FOSAMAX shared the class effects of the other nitrogenous bisphosphonates. Despite this knowledge, Defendant failed to implement further study risk of osteonecrosis of the jaw relative to FOSAMAX. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

23.    Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

24.    Since FOSAMAX was released, the FDA has received a significant number of reports of osteonecrosis of the jaw among users of FOSAMAX.

25.    On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

26.    As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX.

27.    As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw.

28.    Rather than warn patients, and despite knowledge known by Defendant about increased risk of osteonecrosis of the jaw on patients using FOSAMAX, Defendant continues to defend FOSAMAX, mislead physicians and the public, and minimize unfavorable findings.

29.    FOSAMAX is one of Defendant's top selling drugs, averaging more than $3 billion a year in sales.

30. Consumers, including Plaintiff, Vivian Zale, who have used FOSAMAX for treatment of osteoporosis, had several alternative safer products available to treat the conditions.

31. Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff, Vivian Zale, or the medical community, of such risks.

32. As a direct result, Plaintiff, Vivian Zale, was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX. Plaintiff, Vivian Zale, required and will in the future require ongoing medical care and treatment.

33. Plaintiff, Vivian Zale, has suffered from mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

34. Plaintiff, Vivian Zale, was prescribed and began taking FOSAMAX in August 1998 and continued to take FOSAMAX throughout the latter part of 1998.

35. Plaintiff, Vivian Zale, used FOSAMAX as prescribed and in a foreseeable manner.

36. As a direct and proximate result of using FOSAMAX, Plaintiff, Vivian Zale, suffered severe osteonecrosis of the jaw.

37. Plaintiff, Vivian Zale, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

38.     Plaintiff, Vivian Zale, used FOSAMAX which had been provided to her in a condition that was substantially the same as the condition in which it was manufactured and sold.

39.     Plaintiff, Vivian Zale, would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug. Alternatively, Plaintiff, Vivian Zale, would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

40.     Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff, Vivian Zale, and her physicians the true and significant risks associated with taking FOSAMAX. The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

41.     As a result of Defendant's actions, Plaintiff, Vivian Zale, and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff, Vivian Zale, had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## COUNT I

### STRICT LIABILITY

42.     Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

43.     Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff, Vivian Zale.

44. Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including Plaintiff, Vivian Zale, without substantial change in the condition in which it was manufactured and sold by Defendant.

45. Plaintiff, Vivian Zale, used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

46. FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, Vivian Zale, including when it was used as intended and in a reasonably foreseeable manner.

47. FOSAMAX was defective in its design and was unreasonably dangerous in that its unforeseeable risks exceeded the benefits associated with its design or formulation.

48. FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

49. FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, Vivian Zale, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

50. Although Defendant knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

51.    Plaintiff, Vivian Zale, could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

52.    As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

53.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## COUNT II

### NEGLIGENCE

54.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

55.    Defendant owed Plaintiff, Vivian Zale, and other consumers, a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

56.    Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a)    failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

b)    failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

c)    failing to conduct sufficient post-market testing and surveillance of FOSAMAX;

d)    designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, Vivian Zale, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e)    failing to exercise due care when advertising and promoting FOSAMAX; and

f)    negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendant knew or should have known of its adverse effects.

57.    As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has

incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

58.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## COUNT III

## NEGLIGENT MISPREPRESENTATION

59.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

60.    Defendant made fraudulent misrepresentations with respect to FOSAMAX in the following particulars:

a)    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of pain and inflammation; and

b)    Defendant represented that FOSAMAX was safer than other alternative medications.

61.    Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the

safety and risk of FOSAMAX to consumers, including Plaintiff, Vivian Zale, and the medical community.

62. The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, Vivian Zale, rely upon them.

63. Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

64. Plaintiff, Vivian Zale's doctors, and others relied upon the representations.

65. Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff, Vivian Zale.

66. As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

67. Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian

Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

**COUNT IV**

**FRAUDULENT CONCEALMENT**

68.     Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

69.     Defendant fraudulently concealed information with respect to FOSAMAX in the following particulars:

a)     Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b)     Defendant represented that FOSAMAX was safer than other alternative medications and fraudulently concealed information which demonstrated that FOSAMAX was not safer than alternatives available on the market.

70.     Defendant had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

71.     The concealment of information by Defendant about the risks of FOSAMAX was intentional, and the representations made by Defendant were known by Defendant to be false.

72.     The concealment of information and the misrepresentations about FOSAMAX were made by Defendant with the intent that doctors and patients, including Plaintiff, Vivian Zale, rely upon them.

73.     Plaintiff, Vivian Zale's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Defendant concealed from said doctors and Plaintiff, Vivian Zale.

74.     As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

75.     Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## COUNT V

### BREACH OF IMPLIED WARRANTY

76.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

77.    Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

78.    At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

79.    Defendant was aware that consumers, including Plaintiff, Vivian Zale, would use FOSAMAX for treatment of osteoporosis and for other purposes.

80.    Plaintiff, Vivian Zale, and the medical community reasonably relied upon the judgment and sensibility of Defendant to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

81.    Defendant breached its implied warranty to consumers, including Plaintiff, Vivian Zale, FOSAMAX was not of merchantable quality or safe and fit for its intended use.

82.    Consumers, including Plaintiff, Vivian Zale, and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

83.    FOSAMAX reached consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

84.    As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will

continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

85.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## COUNT VI

### BREACH OF EXPRESS WARRANTY

86.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

87.    Defendant expressly represented to Plaintiff, Vivian Zale and other consumers and the medical community that FOSAMAX was safe and fit for its intended purposes, that it was of merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

88.    FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

89.    At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

90.    Plaintiff, Vivian Zale, other consumers, and the medical community relied upon Defendant's express warranties.

91.    As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

92.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## COUNT VII

## LOSS OF CONSORTIUM

93.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

94.    Plaintiff, Robert Zale, was at all relevant times the lawful husband of Vivian Zale.

95.    As a result of the injuries suffered by Vivian Zale, Robert Zale lost the care, comfort, society, attention, companionship, and consortium of Vivian Zale.

WHEREFORE, Plaintiffs request judgment against Defendants for damages in excess of $75,000, together with costs, interest, punitive damages, and any further legal or equitable relief this Court deems appropriate.

## COUNT VIII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

96.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

97.    Defendant placed FOSAMAX into the stream of commerce and/or kept FOSAMAX in the stream knowing that FOSAMAX was not safe for its intended purposes and knowing that FOSAMAX had caused and/or could cause attendant medical problems described herein.

98.    The acts, omissions, and representations of Defendant regarding the manufacturing, distribution, and marketing of FOSAMAX as described in the foregoing paragraphs were intentional, reckless, extreme and outrageous. Defendant intentionally engaged in extreme and outrageous conduct when it intentionally and/or recklessly marketed FOSAMAX, and then intentionally and/or recklessly concealed information

from Plaintiff, Vivian Zale, and her treating physicians about causing severe and permanent injuries.

99.    As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

100.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## COUNT IV

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

101.    Plaintiffs restate and reallege the allegations contained in Paragraphs 1 through 41 above as if fully set forth herein.

102.    Defendant negligently and carelessly:

a)    manufactured, distributed, advertised, promoted, and sold FOSAMAX

b)    manufactured, tested, sold and/or distributed, advertised and/or promoted FOSAMAX to Plaintiff, Vivian Zale, and her physicians;

c)    concealed the danger of FOSAMAX from Plaintiff, Vivian Zale, and her physicians; and

d)    misrepresented the quality, safety, and usefulness of FOSAMAX.

103.    Defendant's negligence and carelessness directly impacted and directly involved Plaintiff, Vivian Zale, in that she ingested FOSAMAX, a defective and dangerous medication manufactured, sold, distributed, and promoted by Defendant causing Plaintiff, Vivian Zale, to suffer emotional distress.

104.    As a direct and proximate consequence of Defendant's conduct, Plaintiff, Vivian Zale, sustained osteonecrosis of the jaw. In addition, Plaintiff, Vivian Zale, required and will continue to require healthcare. Plaintiff, Vivian Zale, has incurred and will continue to incur medical and related expenses. Plaintiff, Vivian Zale, also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff, Vivian Zale, has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

105.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, Vivian Zale, thereby entitling Plaintiff, Vivian

Zale, to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

WHEREFORE, Plaintiffs request judgment against Defendant for damages in excess of $75,000, together with costs, punitive damages, interest, and any further legal or equitable relief this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims triable in this action.

MICHAEL GOETZ, Esquire
Florida Bar No. 963984
mgoetz@forthepeople.com
MORGAN & MORGAN, P.A.
301 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Facsimile: (813) 223-5402
Trial Counsel for Plaintiffs